## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | | |
|---|---|---|
| PRIANKA BOSE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:16-cv-02308-JTF-tmp |
| | ) | |
| RHODES COLLEGE and | ) | |
| ROBERTO DE LA SALUD BEA, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF PRIANKA BOSE'S MOTION TO CERTIFY FINAL JUDGMENT AS TO CLAIM FOR TITLE IX RETALIATION AND TO STAY TRIAL PENDING APPEAL; IN THE ALTERNATIVE, PLAINTIFF'S MOTION FOR INTERLOCUTORY APPEAL**

Comes now Plaintiff Prianka Bose and files this Motion pursuant to Rule 54(b) to Certify Final Judgment as to Plaintiff's Claim for Title IX Retaliation and to Stay the Trial Pending this Appeal. In the alternative, Plaintiff files this Motion for Interlocutory Appeal. In support, Plaintiff states as follows:

### I.   FACTUAL AND PROCEDURAL BACKGROUND

1.      On May 6, 2016, Plaintiff Prianka Bose filed this lawsuit against Rhodes College and Roberto de la Salud Bea alleging a number of causes action. The primary claim and the heart of this lawsuit was and is Plaintiff's Title IX's retaliation claim.

2.      On June 7 and 27, 2016, this Court held a preliminary injunction hearing that focused on Plaintiff's Title IX retaliation claims as well as her breach of contract claim. (Dkt. 51: Ordering Denying Mot. for Prelim. Inj.).

3.      Plaintiff's Title IX retaliation claim is critical because it is in the only action that affords Plaintiff full relief as the breach of contract claim is limited to actual economic damages and specific performance.

4.      On February 16, 2018, the Court informed the parties at their pretrial conference orally that it would be issuing an order dismissing all claims, including the Title IX retaliation claim, except for Plaintiff's breach of contract claim.  So as to fully understand the ramifications of this order on her case, Plaintiff moved to continue the trial until a written order on summary judgment was issued.  This motion to continue was granted.

5.      On February 27, 2018, the Court issued its Order Granting in Part and Denying in Part Defendant's Motion for Summary Judgment.  (Dkt. 149).  In its Order, the Court ruled Defendant Bea's retaliatory motive could not be imputed to Defendant Rhodes College under a "cat's paw" theory because such a "constructive notice" theory is not applicable in the context of Title IX.  (Id. at 11).  In so finding, the Court's holding has massive implications for retaliation claims in the educational arena and significantly limits the relief that can be granted to plaintiffs in such actions.

6.      The Court has now set a trial date of August 24, 2018 for Plaintiff's breach of contract claim.  (Dkt. 153).

7.      Plaintiff now files this motion to certify partial judgment and to stay the trial until an appeal of the Court's Title IX ruling can be heard.  In the alternative, Plaintiff asks the Court for permission to seek interlocutory appeal.

## II. LAW & ARGUMENT

### A. The Court Should Certify Partial Final Judgment under Rule 54(b) and Stay the Trial until Resolution of the Appeal

Pursuant to Rule 54(b), Plaintiff asks this Court to certify a partial final judgment on all claims with the exception of Plaintiff's surviving breach of contract claim so that Plaintiff can pursue an appeal of her Title IX claim immediately.   Further, Plaintiff asks the Court to stay the trial of the breach of contract until the Sixth Circuit reaches a ruling on the appeal of the dismissal of Plaintiff's Title IX retaliation claim as this will allow the parties to try this matter only one time and it will avoid any potential effects of res judicata and issue preclusion.

"Rule 54(b) of the Federal Rules of Civil Procedure permits immediate review of certain district court orders prior to the ultimate disposition of a case." Gen. Acquisition v. Gencorp, Inc., 23 F.3d 1022, 1026-27 (6th Cir. 1994) (citations omitted). "Although Rule 54(b) relaxes the traditional finality requirement for appellate review, it does not tolerate immediate appeal of every action taken by a district court. The rule is specifically 'designed to facilitate the entry of judgment on one or more claims, or as to one or more parties, in a multi-claim/multi-party action.'" Id. (citing Solomon v. Aetna Life Ins. Co., 782 F.2d 58, 60 (6th Cir. 1986)).

Rule 54(b) certification requires two independent findings. "First, the district court must expressly 'direct the entry of final judgment as to one or more but fewer than all the claims or parties' in a case. Second, the district court must 'expressly determine that there is no just reason' to delay appellate review." Id. A district court certifying an order under Rule 54(b) must clearly explain why it has concluded that immediate review of the challenged ruling is desirable. Solomon, 782 F.2d at 61-62.

The first step in certification—entry of partial final judgment—is satisfied "where some decision made by the district court ultimately disposes of one or more but fewer than all of the

claims or parties in a multi-claim/multi-party action." Id. at 1026-27. The Supreme Court has held that a "final judgment" for purposes of Rule 54(b) is defined as "a 'judgment' in the sense that it is a decision upon a cognizable claim for relief, and it must be 'final' in the sense that it is 'an ultimate disposition of an individual claim entered in the course of a multiple claims action.'" Curtiss-Wright Corp. v. Gen. Electric Co., 446 U.S. 1, 7 (1980).

Here, there is no doubt that a final judgment has been issued on all claims with the exception of Plaintiff's "breach of contract" claim. Plaintiff initially filed a lawsuit alleging 15 separate causes of action. (Dkt. 1: Compl.; Dkt. 51 at 7). After the Court's rulings on Defendant's Motion to Dismiss and its Motion for Summary Judgment, only Plaintiff's claim for breach of contract survives for trial. Thus, as a matter of common sense, Plaintiff has met this first element.

Courts have also analyzed this first step as to whether multiple claims exist by analyzing whether the claims arise out of a single "aggregate of operative facts." Here, the Court's ruling evidences a distinction between the critical operative facts under the Title IX claim and under the breach of contract claim. Specifically, the Court held that the potential breach of Rhodes College's contractual obligation grew out of its alleged failure to investigate Plaintiff's claim that Dr. Bea had retaliated against her for her protected activity under Title IX. Whether Rhodes violated this contractual obligation is dependent on the steps and actions that Rhodes took or did not take after Plaintiff triggered Rhodes's obligations under its Title IX Handbook provisions by alleging sexual harassment and retaliation against Dr. Bea. In contrast, Plaintiff's Title IX retaliation claim is dependent on the actions that Dr. Bea took to falsify claims of cheating and his supporting evidence in his effort to manipulate the Honor Council machinations to retaliate against Plaintiff for her rebuffing his romantic advances out of his fear that his tenure application

would be adversely affected. As such, Plaintiff's claim for breach of contract and her claim for Title IX retaliation arise out of two separate operative factual scenarios and should be considered independently.  Exemplifying that these are separate claims is the fact that had both claims been allowed to proceed to a jury, that jury could find that the Rhodes breached its contractual obligation to conduct an investigation, but that retaliation did not occur.  Indeed, the Court held this was a possible scenario when it ruled on Defendant's motion for summary judgment.  As such, the first step in certification that final judgment has been reached on a multiple but not all claims has been satisfied.

Under Rule 54(b), the Court must then undertake the second step in certification—a "determination of no just reason for delay."  Gen. Acquisition, 23 F.3d at 1027.  This second step "requires the district court to balance the needs of the parties against the interests of efficient case management."  Id.  "Courts implementing Rule 54(b) must strike a balance between the undesirability of more than one appeal in a single action and the need for making review available in multiple-party or multiple-claim situations at a time that best serves the needs of the litigants."  Id. (citations and quotations omitted).  The Sixth Circuit looks at the following factors in determining whether a "just reason to delay" exists:

> (1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense and the like.

Id. at 1030.

As to the first factor, the Court may examine the relationship between the adjudicated and unadjudicated claims.  This examination is essentially focused on how closely related the claims

are and whether they stem from essentially the same factual allegations. Solomon, 782 F.2d at 62. Here, while the breach of contract claim and the Title IX retaliation claim certainly derive from the retaliation allegation against Dr. Bea, the issue of liability against Rhodes College for the breach of contract is based on a set of facts that is wholly separate and independent from whether Dr. Bea actually committed retaliation. As such, the closeness of the claims does not demonstrate a need for delay of the appeal.

Second, there is no likelihood that future developments in the district court will moot the question of whether Title IX allows a "cat's paw" theory of liability. The only proceeding left for the continued breach of contract claim is the trial. Neither a favorable nor unfavorable result for the Plaintiff will moot the Title IX issue as even if Plaintiff obtains a favorable verdict, she will be unable to obtain attorney's fees or the type of injunctive relief that would bring an end to her ongoing damages, and thus no remedy under the state law breach of contract will leave her whole. As such, an appeal will follow regardless of the trial's outcome. Notably, Plaintiff has requested a stay of the current trial while this matter is on appeal so that the parties will only have to try this matter once with all actionable claims at issue.

Third, the Sixth Circuit will not be required to review this issue of the applicability of a "cat's paw" theory under Title IX more than once. This single review will decide what issues may be tried and a subsequent appeal of the same issue would be untenable as this holding by the appellate court on this earlier appeal would be controlling regardless of the outcome of the trial.

Fourth, parties are to look at the existence or absence of a potential "set-off" against the judgment to be made final. Here, in the breach of contract claim, Defendant Rhodes College is likely to argue that the relief that is available to Plaintiff is specific performance in the form of a proper investigation. Given that theory, no set-off is at issue. Furthermore, the Title IX

6

retaliation claim allows Plaintiff to recover attorney's fees, compensatory damages, and injunctive relief tailored to restore her reputation and academic standing.  None of those remedies are available under the breach of contract claim.  Lastly, as Plaintiff seeks a stay of the trial while pending appeal of the Title IX retaliation dismissal, any potential set-off issues would not be a relevant factor in the analysis.

Lastly, the Court is to examine questions of judicial economy and expense in determining whether a just reason for delay of the appeal exists.  These factors weigh in favor of granting this motion and staying the trial until the appeal is resolved.  Specifically, if the Court were to deny the instant motion and try only the claim for breach of contract, it would potentially be required to try the case a second time if the Sixth Circuit were to find error in the order on summary judgment.  Clearly the litigants' costs in preparation for two trial and the federal court's paying for two separate jury trials warrants for sake of judicial economy certification of this partial judgment and staying the current trial date.

Based on these arguments, Plaintiff has established that her Title IX retaliation claim is a separate claim upon which final judgment has been granted and that in examining a variety of factors, no just reason for delay of the appeal exists.  As such, the Court should grant Plaintiff's motion to certify partial judgment and to stay the trial until the appeal has been ruled upon by the Sixth Circuit.

## B. In the Alternative, the Court should Grant Plaintiff's Motion for Interlocutory Appeal

Pursuant to Local Rule 7.3 and 28 U.S.C. Section 1292(b), Plaintiff submits this memorandum in support of her motion for certification of the Court's Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment of February 27, 2018. As detailed below, the Order meets the criteria for certification for interlocutory review pursuant to U.S.C. §

1292(b) and, as a result, the Court should certify the issue discussed below for interlocutory review.

### 1.  Issue for Interlocutory Appeal

The Court's Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment, entered on February 27, 2018, granted Defendants' Motion for Summary Judgment as to Plaintiff's Title IX claims, breach of contract claims under the Honor Council Constitution and Title IX Handbook, the Tennessee Consumer Protection Act claims against Rhodes and the intentional interference with business relations claim against Defendant Bea only. The Court denied the Motion for Summary Judgment as to Plaintiff's breach of contract claim under the Title IX Handbook for failure to investigate her retaliation claim and her claim for intentional interference with business relations claim against Defendant Rhodes. The Court found that Plaintiff did not state a Title IX claim for retaliation against Rhodes College because there was no causal connection between the protected activity and the adverse educational action. Additionally, the Court found that Defendant Bea's alleged retaliatory motive could not be imputed to the Honor Council, and thereby Defendant Rhodes, under the "cat's paw" theory of liability because it is "based on principles of *respondeat superior* and/or constructive notice that are not applicable in the Title IX context." Order Granting in Part and Den. In Part Defendants' Mot. for Summ. J. 11, Feb. 27, 2018 (ECF No. 149).  Thus, Pursuant to 28 U.S.C. § 1292(b), the Plaintiff respectfully moves this Court to certify the following question for interlocutory appellate review:

> Whether the theory of cat's paw liability is applicable in a Title IX
> retaliation claim?

### 2.  Standard for Interlocutory Appeal

Under 28 U.S.C. § 1292(b), a district judge may certify an otherwise interlocutory order for immediate appeal if the order involves (1) a controlling question of law (2) about which there is substantial ground for difference of opinion and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation. <u>Lincoln Nat'l Life Ins. Co. v. Hartnett</u>, 2014 U.S. Dist. LEXIS 189558, *6-7 (W.D. Tenn. Aug. 18, 2014). The requirements for interlocutory appeals are set forth in 28 U.S.C. § 1292(b), which provides in pertinent part:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order. . . .

In the present matter, the appellate court would not need to resolve any factual issues to decide this question. Moreover, this issue is controlling given that the question of whether Defendant Rhodes is liable under a "cat's paw" theory of liability for the animus-laced actions of its employee, Defendant Bea, in the context of a Title IX retaliation claim is central to this litigation. There is no prior Sixth Circuit case directly tackling this issue. Finally, an immediate appeal would materially advance the ultimate termination of this litigation as Plaintiff's claims

Plaintiff has identified just one controlling question for interlocutory appeal: whether cat's paw liability is applicable in a Title IX retaliation context. A matter of law is "controlling" if its resolution could materially affect the litigation's outcome. <u>W. Tenn. Chptr. of Assoc. Builders & Contrs., Inc. v. City of Memphis</u>, 138 F. Supp. 2d 1015, 1018 (W.D. Tenn. Dec. 20, 2000).  An issue is controlling if its resolution could result in a reversal of a district court's final

judgment, has precedential value, or if it would save the Court and the parties substantial time and resources. Id. at 1018-19.

Given that this Court granted Defendants' Motion for Summary Judgment as to Plaintiff's Title IX retaliation claim specifically because it held that "cat's paw" liability does not apply in such cases, a resolution of this question of "primary importance" to Plaintiff's case and could reverse this Court's Order. See United States ex rel. Elliott v. Brickman Group Ltd., LLC, 845 F.Supp. 2d 858, 865 (S.D. Ohio Jan. 12, 2012) (finding that questions of law which are of "primary importance" to a case are controlling questions of law).

### a. *Substantial Ground for Difference of Opinion*

Substantial grounds for a difference of opinion exist when the issue is difficult and of first impression, a difference of opinion exists within the controlling circuit, or the circuits are split on the issue. Hamby v. Morgan Asset Mgmt. (In re Regions Morgan Keegan Erisa Litig.), 741 F. Supp. 2 d 844, 849 (W.D. Tenn. June 30, 2010). Here, there is substantial ground for difference of opinion because various district courts and Circuits have heard the cat's paw theory in Title IX retaliation cases but come to various conclusions.

For example, in Varlesi v. Wayne State University, the district court did not find that cat's paw theory was applicable to a Title IX claim but only because the plaintiff's supervisor at the religious-based rehabilitation center for men with substance abuse issues where she did her field internship was not an agent or employee of the university where she received a failing grade. Varlesi v. Wayne State University, 909 F.Supp. 2d 827, 856 (E.D. Mich. Feb. 16, 2012). The Ohio Southern District Court heard a Title IX gender discrimination claim wherein the plaintiff argued that the person responsible for making the decision to terminate him was influenced by individuals with gender animus towards him. Waters v. Drake, 222 F.Supp. 3d

582, 603 (S.D. Ohio Aug. 12, 2016). That district court held that Ohio State University was entitled to summary judgment on the facts of the cat's paw theory because the alleged influencers wrote a report clearing plaintiff in a different university Title IX investigation. Id.

Other circuits have also addressed the issue. The Ninth Circuit Court of Appeals has found that a cat's paw theory of liability is applicable in Title IX retaliation claims. See Emeldi v. Univ. of Oregon, 673 F.3d 1218, 1227-28 (9th Cir. 2012) (applying cat's paw theory where, when accepting the facts plead by plaintiff as true, there is non-speculative evidence supporting reasonable inferences of causation). The Southern District of Texas rejected a plaintiff's cat's paw argument solely because there was no evidence that the alleged influencer had any ability to influence the ultimate decision maker. Bison v. Univ. of Houston, 493 F. Supp. 2d 896, 914 (S.D. Tex. June 21, 2007).

Other appellate opinions addressing the issue are sparse, but Plaintiff's research yields one appellate case arising under a "cat's paw" theory of retaliation in the Title IX context, Papelino v. Albany College of Pharm. of Union Univ. 633 F.3d 81 (2nd Cir. 2011). While the Papelino court did not use the term "cat's paw," the Second Circuit reasoned that a theory that was essentially identical to what is now usually termed a "cat's paw" theory was actionable under Title IX. Id. at 91.  The case arises from a "cat's paw" theory under facts that are strikingly similar to those alleged by Plaintiff. Specifically, Papelino alleged that he was sexually harassed by a professor while a student at the defendant academic institution. Id. at 84. Said professor accused Papelino of cheating in one of her chemistry courses. Id. at 85. Said professor testified before the school honor council, and her testimony consisted of evidence and charts prepared by the professor. Id. Papelino was determined to have cheated, his appeal failed, and he was expelled. Id. Papelino sued, *inter alia*, for retaliation under Title IX. Id. at 91. In holding that

11

Papelino's claim for retaliation in the Title IX context (brought under a "cat's paw" theory) was actionable, the Second Circuit explicitly reasoned that the Title VII standard regarding the knowledge requirement of retaliation applied. Id. at 91. The Second Circuit went on to state that "[i]n a retaliation case, a plaintiff is only required to prove that 'a retaliatory motive played a part in adverse actions toward him, whether or not it was the sole cause.'" Id. This analysis contains all of the elements of a "cat's paw" theory of liability. While this Court is certainly not bound by the Second Circuit's decision in Papelino, the existence of an appellate decision that so closely mirrors this case and addresses the central thrust of whether educational institutions may be held liable under Title IX for retaliation by an employee gives substantial weight to the Plaintiff's view that there is substantial ground for a difference of opinion warranting review by the Sixth Circuit.

Further, Plaintiff believes that, based on the Sixth Circuit Court of Appeals' own prior precedent of applying Title VII standards and frameworks to claims of retaliation under Title IX, Fuhr v. Hazel Park Sch. Dist., 710 F.3d 668, 673 (6th Cir. 2013), it is likely that the Court of Appeals would disagree with the Court's Order finding that the cat's paw theory does not apply in Title IX retaliation claims because it has previously held that it applies in Title VII retaliation cases. Therefore, certification of this question for interlocutory appeal is appropriate.

### b. An Immediate Appeal May Materially Advance the Ultimate Termination of the Litigation

The final element necessary for certification of a question for interlocutory appeal is whether an answer to the question would materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b).  As noted above, the crux of this case despite the other causes of action alleged in the original complaint, has always been that of a Title IX retaliation.  Title IX provides the monetary remedial relief required for Plaintiff to be made whole.  If Plaintiff is

12

allowed an interlocutory appeal, litigation will be materially advanced because it will eliminate the likelihood of the need for a second trial as the appeal will ensure (either successfully or unsuccessfully for Plaintiff) that all issues that could potentially be tried will be tried before one jury.

If this motion is not granted, the parties will be forced to try the breach of contract claim in August 2018. Regardless of the outcome of that trial, Plaintiff will be forced to appeal because the breach of contract claim does not provide for the relief necessary to make Plaintiff whole. So, Plaintiff will have no choice but to appeal after the August 2018 trial even if she is victorious. The result of a successful appeal would then be a second trial of the Title IX retaliation claim in front of a separate jury. The resources that are required for the parties to prepare for two separate trial are significant, as are the judicial resources required for the Court to provide the time and expense necessary to have two jury trials.

The least costly and most efficient way to spend the resources of the parties and to bring this matter to a conclusion is to allow for an interlocutory appeal of the Title IX retaliation dismissal so that they parties can have one trial and know that a second trial is not sitting around the corner waiting for them. Accordingly, Plaintiff asks the Court in the alternative to grant her motion for interlocutory appeal of the dismissal of her Title IX retaliation claim.

### III. CONCLUSION

For the reasons stated above, Plaintiff respectfully requests the Court to certify final judgment of the Title IX retaliation claim and to stay the trial until the Sixth Circuit has had the opportunity to rule on the appeal. In the alternative, Plaintiff asks the Court to certify this question of law for interlocutory appeal. This question is controlling in this case, i.e. the answer to same may reverse this Court's order and it is one that has not been addressed specifically by

the Sixth Circuit Court of Appeals. There appears to be a significant difference of opinion as to whether cat's paw liability applies in the Title IX context generally and specifically in retaliation claims. Further, an immediate appeal would advance the termination of this litigation by eliminating the likelihood of multiple trial. Thus, all elements are met to certify this question for interlocutory appeal.

Respectfully submitted,

BLACK MCLAREN JONES RYLAND & GRIFFEE
A Professional Corporation

By:    _____
        BRICE M. TIMMONS        #29582
        530 Oak Court Drive, Suite 360
        Memphis, Tennessee 38117
        (901) 762-0535 – telephone
        (901) 762-0539 – facsimile
        btimmons@blackmclaw.com

        BRYCE ASHBY #26179
        Donati Law, PLLC
        1545 Union Avenue
        Memphis, Tennessee 38104
        (901) 270-6422
        Bryce@donatilaw.com

        *Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 25th day of April, 2018, a true and correct copy of the foregoing has been sent via the Court's ECF system to counsel for Defendant, Lisa A. Krupicka and Gary S. Peeples, Burch Porter & Johnson, PLLC, 130 North Court Avenue, Memphis, Tennessee 38103.

_____
*Attorney for Plaintiff*

**CERTIFICATE OF CONSULTATION**

I hereby certify that on March 1, 2018 I consulted with counsel for Defendant regarding the relief sought in this motion.  Counsel for Defendant stated that Defendant opposed Plaintiff's motion.

_____
*Attorney for Plaintiff*

15